IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-02650-CBS

ALAN LEE PETTYJOHN,
    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,
    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

    This civil action comes before the court pursuant to Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33, for review of the Commissioner of Social Security's final decision denying Mr. Pettyjohn's application for Social Security Disability Income ("SSDI") benefits. [1] Pursuant to the Order of Reference dated July 14, 2015, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). (*See* Doc. # 19). The court has reviewed the Complaint, Defendant's Answer, Plaintiff's Opening Brief, Defendant's Response Brief, the administrative record, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Procedural History

    Mr. Pettyjohn applied for SSDI benefits on June 27, 2011. (*See* Administrative Record ("Tr.") (Doc. # 9) at 52). He claimed that he became disabled on February 1, 2010. (Tr. 139).

---

[1] SSDI pays benefits to people with disabilities who have worked and paid Social Security taxes on their earnings. Benefits payable under Title II (SSDI) are based on earnings history. Regulations for Title II are found at 20 C.F.R. §404.

His claim was denied on October 28, 2011 and he requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 52, 74-83).  ALJ Charles J. Arnold held a hearing on February 15, 2013.  (Tr. 28-51).  Mr. Pettyjohn was represented by counsel and testified at the hearing.  (Tr. 135-136, 30-44).  James T. Parker testified at the hearing as a Vocational Expert ("VE").  (Tr. 45-50, 124-126).  The ALJ issued his written decision on March 7, 2013, concluding that Mr. Pettyjohn was not disabled within the meaning of the Act.  (Tr. 14-25).  On April 3, 2013, Mr. Pettyjohn sought review of the ALJ's decision.  (Tr. 13).  The Appeals Council received additional evidence and denied his request for review on July 29, 2014.  (Tr. 1-4).  Mr. Pettyjohn filed this civil action on September 25, 2014.  (*See* Doc. # 1).  The court has jurisdiction to review the final decision of the Commissioner.  42 U.S.C. § 405(g).

II.     Standard of Review

In reviewing the Commissioner's final decision, the court must "closely examine the record as a whole to determine whether the . . . decision is supported by substantial evidence and adheres to applicable legal standards."  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (internal quotation marks and citation omitted).  *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (court "must determine whether the . . . decision of nondisability, . . . is supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court "must affirm . . . if the decision is supported by substantial evidence."  *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988) (citing 42 U.S.C. § 405(g)).  "A decision is not based on substantial evidence if it is overwhelmed

2

by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of reh'g* (April 5, 2002). *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted); *Mounts v. Astrue*, No. 11-1172, 479 F. App'x 860, 867 (10th Cir. May 9, 2012) (court cannot reweigh the evidence and come to a different conclusion than the ALJ) (citation omitted).

III.   Analysis

It is a social security claimant's burden to prove he is disabled. *Bradley v. Colvin,* No. 15-6137, 2016 WL 1019214, at * 1 (10th Cir. March 15, 2016) (citation omitted). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. *See Williams*, 844 F.2d at 750-52 (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In the first three steps, the Commissioner determines whether claimant has

engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  *Id.* at 750–51.

If a claimant's impairment does not meet or equal a listed impairment, the evaluation proceeds to step four, where the Commissioner assesses a claimant's Residual Functional Capacity (RFC), 20 C.F.R. §§ 404.1520(e), and the claimant must establish that he does not retain the RFC to perform his past relevant work.  *Pipkins v. Colvin*, No. CIV-14-136-RAW-KEW, 2015 WL 3618281, at *1, n. 1 (E.D. Okla. June 9, 2015).  "A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability."  *Williams*, 844 F.2d at 751.  At step four of the five-step analysis, "a claimant's RFC is measured against the physical and mental demands of the claimant's past relevant work to determine whether the claimant can resume such work."  *Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18, 2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the claimant's past relevant work"; and (3) ascertaining "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] found in phase one.")).

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five the existence of a significant number of jobs in the national economy that a claimant can perform given his RFC, age, education, and work experience.  *Neilson*, 992 F.2d at 1120.

> . . . The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform.  In this

4

context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy.  To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work).

. . . If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing.

. . . The decision maker must then consider all relevant facts to determine whether the claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations. . . .

Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain. . . .

*Williams*, 844 F.2d at 751-52. (citations omitted).  The Commissioner can meet the burden of showing that there is other work in significant numbers in the national economy that claimant can perform by the testimony of a VE.  *Tackett v. Apfel*, 180 F.3d 1094, 1098–1099, 1101 (9th Cir.1999).  "Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work."  *Pipkins v. Colvin*, 2015 WL 3618281, at *1, n.1.

The ALJ determined that Mr. Pettyjohn: (1) had not engaged in substantial gainful activity since the alleged onset date of disability, February 1, 2010, (2) had as severe impairments "bipolar disorder, panic disorder, and recurrent major depressive disorder," and (3) did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (Tr. 19-21).  The ALJ determined that Mr. Pettyjohn had the RFC "to perform a full range of work at all exertional levels, but with the following nonexertional

5

limitations: low stress work identified as simple, routine, and repetitive tasks with simple instructions; without exposure to hazards; no interacting with the public; and no fast-paced production quotas or demands." (Tr. 21-23). The ALJ relied on the testimony of the VE to reach his decision at step four that Mr. Pettyjohn could not perform his past relevant work as a chief print specialist and at step five that there were other jobs existing in the national economy that he could perform. (Tr. 23-25). The ALJ concluded that Mr. Pettyjohn was not disabled. (Tr. 25). Mr. Pettyjohn alleges that the ALJ erred by: (1) incorrectly weighing the medical opinions, and (2) improperly evaluating his credibility. (*See* Doc. # 12 at 14-21 of 22).

A.      Weight Assigned to Medical Opinions

Mr. Pettyjohn alleges that in determining his RFC, the ALJ erred in failing to accord controlling weight to the psychological evaluation prepared by licensed psychologist Scott Wylie (Tr. 308-315), the mental impairment questionnaire prepared by Haldis Kelly, Ph.D. (Tr. 343-350), the mental impairment questionnaire prepared by Enny Ortecho, MSW and psychiatric nurse practitioner Miriam Davidson (Tr. 333-340), and the Mental Resudual Functional Assessment prepared by Kelley Rumbyrt, M.D. (Tr. 60-62). "In making the RFC assessment, an ALJ considers how an impairment, and any related symptoms, may cause physical and mental limitations that affect what a claimant can do in a work setting." *Davison v. Colvin*, No. 14-1122, 596 F. App'x 675, 680 (10th Cir. 2014) (citing 20 C.F.R. § 404.1545(a)(1)). The RFC represents "the most [a claimant] can still do despite [his] limitations." *Id.* "The RFC assessment is made based on all the evidence in the record, both medical and non-medical." *Davison*, 596 F. App'x at 680.

From 1991 to 2000, Mr. Pettyjohn was employed as a machine operator and lead operator at R&R Donnelley & Sons Printing in Greeley, Colorado. (Tr. 190, 196). He was employed at Quebecor World Printing in Loveland, Colorado from 2001 to 2010, supervising 12 to 15 employees and earning an annual salary of approximately $70,000.00. (Tr. 34, 170, 190, 196). He was terminated from his employment on or about February 1, 2010. (Tr. 32-33). The day after he was terminated, he experienced his first panic attack. (Tr. 34). He had a long history of heavy alcohol use that increased after he lost his job and culminated with his admission to the emergency department at North Colorado Medical Center for detoxification and treatment for alcohol withdrawal on April 19, 2010. (Tr. 34-35, 266-267, 284, 326). He participated in inpatient and outpatient treatment and experienced significant improvement in his condition. (Tr. 231, 233, 235). His sleep, appetite, and appearance improved. (Tr. 231). He met a woman, visited her in California at least twice, and she moved to Colorado with her two children. (Tr. 23). He cooked, cleaned house, did home repairs, did yard work, read, played computer games, watched television, drove, went out with family, went out to eat with his girlfriend once per week, and shopped for groceries. (Tr. 22, 170-172). He lived in an apartment and moved to a house with his fiancé. (Tr. 326, 328, 330, 359). He and his fiancé married and later separated. (Tr. 447, 368). Mr. Pettyjohn had an inpatient hospitalization at North Colorado Medical Center on August 30, 2012, after he reported suicidal ideation to North Range Behavioral Health. (Tr. 38, 376-520). His condition improved and he was discharged with plans to live with his mother. (Tr. 377-378).

Scott Wylie conducted a consultative evaluation on October 3, 2011. (Tr. 308-315). He noted moderate to marked restrictions in activities of daily living. (Tr. 315). He opined that Mr. Pettyjohn had moderate limitations in sustaining concentration and marked restrictions in

requesting assistance, accepting criticism, getting along with others, and dealing with changes in routine.  (Tr. 311, 315).  The ALJ reviewed the record and determined that Scott Wylie's opinion was not well-supported by his own findings.  (Tr. 22).  "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."  *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (internal quotation marks omitted).  Scott Wylie indicated that Mr. Pettyjohn retained a capacity for simple instructions or detailed instructions, displayed strong interpersonal skills, did not display social or occupational limiting behaviors, and was competent to manage his own funds.  (Tr. 309, 311).  He also observed that Mr. Pettyjohn "was oriented to person, place, time and situation."  (Tr. 311).  "His thinking appeared to be entirely within normal limits with no signs of a formal thought disorder.  He displayed intact memory functioning for recent and remote events as well as working memory."  (Tr. 311).  He found that Mr. Pettyjohn was friendly, open, forthcoming, cooperative, and easily established rapport.  (Tr. 309).  The limitations set forth were internally inconsistent with Scott Wylie's own and the totality of the findings of Mr. Pettyjohn's abilities.  *See* 20 C.F.R. § 404.1527(c)(3)(more weight given to an opinion from a medical source who supports his opinion with evidence, "particularly medical signs and laboratory findings").  The ALJ reasonably noted that Scott Wylie's observations and objective examination findings were at odds with his final conclusions.  (Tr. 22).  *See White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002) (discrepancy between treating physician's very restrictive functional assessment and her contemporaneous examination a legitimate factor for rejecting that opinion).

Haldis Kelly, Ph.D. prepared a mental impairment questionnaire on May 31, 2012.  (Tr. 343-350).  She first saw Mr. Pettyjohn on November 28, 2011.  (Tr. 343, 350).  She opined that Mr. Pettyjohn had moderate to marked limitations in several work-related mental activities.  (Tr.

345-348).  Enny Ortecho, MSW and psychiatric nurse practitioner Miriam Davidson filled out an

identical undated mental impairment questionnaire form.  (Tr. 333-340).[2]  They opined that Mr.

Pettyjohn was moderately to markedly limited in several work-related mental activities.  (Tr. 335-

338).  The ALJ determined that these opinions were not well-supported by the treatment notes

and the totality of the evidence of Mr. Pettyjohn's level of functioning.  (Tr. 23).  Mr. Pettyjohn

alleges that the ALJ erred by giving limited weight to their assessments.  (See Doc. # 12 at 17 of

22).

        Haldis Kelly's assessment was not well-supported by her own findings, the other medical

records, or the totality of the evidence.  For example, she did not note whether Mr. Pettyjohn

retained a capacity for simple instructions.  She checked the boxes that indicated that Mr.

Pettyjohn's capacity for detailed instructions was both markedly limited and not ratable.  (Tr.

346).  She also indicated that Mr. Pettyjohn's ability to tolerate stress "varies" and that he is

capable of tolerating low stress.  (Tr. 349).  The ALJ gave significant weight to the treatment

records.  (Tr. 23).  Treatment notes demonstrated that Mr. Pettyjohn retained a higher level of

function than the assessment allowed.  During the time period that Haldis Kelly, Enny Ortecho,

and Miriam Davidson treated Mr. Pettyjohn, he reported his lifestyle and activities as described

above and that he was "sleeping ok" and "feels like he is doing well."  (Tr. 328, 330, 359, 368).

---

        [2]        The Social Security regulations distinguish between "medical sources" and "other
sources."  20 C.F.R. §§ 404.1527, 416.927.  Enny Ortecho, MSW and psychiatric nurse practitioner
Miriam Davidson fall within the category of "other sources."  See 20 C.F.R. § 404.1513(d), SSR 06–03p,
2006 WL 2329939, at *1–2 (Aug. 9, 2006).  SSR 06–3p acknowledges information from "other sources"
cannot establish the existence of a medically determinable impairment.  Nevertheless, evidence from
"other sources" may be used "to show the severity of the individual's impairment(s) and how it affects the
individual's ability to function."  SSR 06–3p, 2006 WL 2329939 *2.  The ALJ generally should discuss the
weight given to opinions from "other sources" and consider the same factors that apply to physician
opinions.  SSR 06-3p, 2006 WL 2329939, at *5.  See also Frantz v. Astrue, 509 F.3d 1299, 1302 (10th
Cir.2007) ("[T]he factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. §
404.1527(d) and § 416.927(d) apply equally to all opinions from medical sources who are not acceptable
medical sources as well as from other non-medical sources.") (internal quotation marks omitted).

Enny Ortecho, and Miriam Davidson reported that Mr. Pettyjohn is capable of tolerating low stress and that "sometimes [he] feel[s] O.K.!" (Tr. 339). There is evidence in the record that Miriam Davidson's role was limited to monitoring Mr. Pettyjohn's medication and that "[s]he doesn't comment on my general condition." (Tr. 197). Contrary to the assessments of Haldis Kelly, Enny Ortecho, and Miriam Davidson, the record contains no evidence that Mr. Pettyjohn had difficulty maintaining a schedule, interacting with others, responding to work changes, or maintaining concentration. He experienced multiple life changes during his treatment period without decompensation. The more recent record suggested that he was "doing well" with concentration, focus, motivation, interests, and appetite. (Tr. 352-375). He maintained his successful recovery from alcohol dependence since April of 2010 and his depression improved. It was observed that "overall patient is improved." (Tr. 330, 368). In sum, their own findings, other medical records, Mr. Pettyjohn's self-described activities, and the totality of the evidence do not support Haldis Kelly's or Enny Ortecho's and Miriam Davidson's assessments. *See* 20 C.F.R. §§ 404.1527(d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

Kelley Rumbyrt, M.D., reviewed the record and concluded that Mr. Pettyjohn retained the capacity to perform work not involving significant complexity or judgment or requiring him to work closely with supervisors or coworkers or interact with the general public. (Tr. 60-62). The ALJ found Dr. Rumbyrt's opinion to be "fairly consistent with the record" with the single exception that the evidence in the record did not support Dr. Rumbyrt's conclusion that Mr. Pettyjohn could not work closely with supervisors or coworkers. (Tr. 23, 62). Based upon the evidence in the record that Mr. Pettyjohn had no difficulties maintaining several personal relationships, interacting with his medical providers, or participating in the administrative

10

hearing, the ALJ declined to include limitations for coworkers or supervisors in the RFC.  (Tr. 23).

Dr. Rumbyrt noted that while Mr. Pettyjohn alleged significant restrictions in his activities of daily living, the evidence did not support his claim.  (Tr. 58).  Mr. Pettyjohn also reported "great difficulty with memory and concentration," however, upon examination, he was "able to do quite well in understanding and memory."  (Tr. 58).  Dr. Rumbyrt concluded that Mr. Pettyjohn had no limitations in understanding or memory, and was not significantly limited in carrying out simple or detailed instructions, maintaining attendance, making simple work-related decisions, getting along with coworkers, or maintaining appropriate behavior.  (Tr. 61-62).  As Dr. Rumbyrt did not have access to all of the evidence before the ALJ, the ALJ's conclusion was reasonable. *See* 20 C.F.R. § 404.1527(c)(6) (ALJ may consider extent to which the medical source is familiar with other information in the record).  The ALJ accepted all but one portion of Dr. Rumbyrt's October 26, 2011 assessment for reasons that are recognized as legitimate.  *See Pilgrim v. Apfel*, No. 99-5152, 215 F.3d 1337, at *2 (10th Cir. June 8, 2000) (reasons recognized as legitimate for rejecting a treating physician's opinion include that it was conclusory, not supported by clinical and laboratory diagnostic techniques, and inconsistent with other evidence in the record).

"[T]he ALJ's decision is sufficient if it permits us to follow the adjudicator's reasoning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012).  The court concludes that the ALJ considered the appropriate factors and did not err in the weight he accorded to the medical and other source opinions.  The court may not reweigh the evidence supporting the ALJ's determination.  *Hays v. Colvin*, No. 14-1420, 2015 WL 6384719, at * 4 (10th Cir. Oct. 22, 2015). The court finds no error on this issue.

D.      Credibility

Mr. Pettyjohn alleges that the ALJ erred in concluding that his complaints were not entirely credible as to the intensity, persistence, and limiting effects of his symptoms.  (*See* Doc. # 12 at 19-21 of 22).  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to [that] evidence." *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011) (internal quotation marks and citation omitted).

Mr. Pettyjohn stated in a Function Report that he has difficulties with hearing, seeing, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others.  (Tr. 169-176).  He testified at the February 15, 2013 hearing that he has difficulties leaving the house and interacting with the public.  (Tr. 36-37, 39-40, 42).  The ALJ discounted Mr. Pettyjohn's description of the severity and disabling effect of his symptoms based on discrepancies between his statements and the medical and other evidence in the record.  (Tr. 21-22).

Mr. Pettyjohn's description of the severity and disabling effects of her symptoms is not consistent with the other substantial evidence in the record, including his own statements.  For example, while Mr. Pettyjohn reported sleeplessness, the treatment records repeatedly indicate that he is sleeping well.  (Tr. 169-170, 231, 235, 326, 328, 330, 359, 362, 365, 368).  While he reported that he can almost never leave the house, he shops with his girlfriend once per week, goes out to eat every one to two weeks, attends therapy once per week, and goes out alone late at night.  (Tr. 42-43, 172-173, 37).  While he states that he can only concentrate for one to five minutes, he also states that "[r]eading is not a problem" and he can follow spoken instructions

12

"fairly well." (Tr. 174). He states that "change can shut me down for days," yet he managed many life changes without decompensation during the time period he alleges he was disabled. (Tr. 175). He states that he "can't even answer a phone," yet he was able to meet his wife, travel to visit her, assist her with child custody issues, and assist her with moving from California to Colorado. He is able to "clean, vacuum, do dishes and some home repairs," play games on the computer, walk, drive, ride in a car, ride a bicycle, "manage light house or yard work," and use a checkbook and a debit card. (Tr. 40, 171-173, 176). He testified that he stopped drinking on April 15, 2010, yet the record reflects that he continued to drink after that date. (Tr. 36, 368 ("He has been drinking some, but feels that he is able to control this.")). He displayed no difficulties interacting with people in his treatment settings or at the hearing before the ALJ. The totality of the record demonstrates that Mr. Pettyjohn had significant capacity to do many things. While Mr. Pettyjohn alleges that he is unable to work, there is evidence that he is not motivated to find a job. (Tr. 385, 398-399, 453). Substantial record evidence supports the ALJ's credibility determination. The court finds no error on this issue.

IV.    Conclusion

The Commissioner's determination that Mr. Pettyjohn is not disabled is "clearly and affirmatively linked . . . to substantial record evidence. . . ." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (citation omitted). The Tenth Circuit's "precedents do not require more" and the "limited scope of review precludes [this court] from reweighing the evidence or substituting [its] judgment for that of the" Commissioner. *Id.* (internal quotation marks and citation omitted). The court is satisfied that the ALJ considered all relevant facts and that the record contains

substantial evidence from which the Commissioner could properly conclude that Mr. Pettyjohn

was not disabled within the meaning of Title II of the Social Security Act.  Accordingly,

IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action

is DISMISSED, with each party to bear his or her own attorney fees and costs.

DATED at Denver, Colorado, this 28th day of March, 2016.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge